# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| v. ) | Case No.: 1:23-CR-00103-JAW |
| ) | |
| **ANGELO CASTIGLIOLA,** ) | |
| **Defendant** ) | |

### DEFENDANT'S SENTENCING MEMORANDUM

NOW COMES the Defendant, Angelo Castigliola, by and through his Undersigned Counsel, and submits this Sentencing Memorandum to the Court.

### Introduction

Were it not for the events that occurred between May and July of 2023, Angelo's life story would read like a tale of resilience, success, and strength of character. Angelo struggled with adversity through much of his childhood and adult life. In adulthood, he tackled his mental illness and its impact on his family. He engaged in treatment, often reaching out himself for help. Yet, despite these challenges, he was a highly successful programmer, held long-term and steady employment with large companies as a system's analyst and cybersecurity expert, and was active in his son's life.

During the timeframe between May and July of 2023, Angelo turned into a different person and made a significant number of extremely vile threatening, harassing, and inappropriate calls to a number of people. His behavior also

1

became erratic at times, all consistent with a serious decline in his mental health. He was not taking medications at the time.

Prior to his arrest for these offenses, Angelo never spent a night in jail until he was 42 years old. Since that night, he has been incarcerated for 17 months, nearly the maximum guideline sentence range of 18 months. *PSR* at ¶ 68.

However, Angelo now is taking Wellbutrin, Trileptal, and Clonidine. His mental health is stable, and he had demonstrated that it is time for him to return to society.

## 18 U.S. 3553 Factors

### Personal history and characteristics

Angelo was exposed to domestic violence in the home when he was younger. As noted in the PSR, Angelo's Mother, Peggy, divorced Angelo's father (Angelo Jr.) due to his abusive behavior. *PSR* at ¶ 51. Angelo (the defendant) recalls his father being in an out of jail for various offenses during his childhood. *PSR* at ¶ 51. Although the interactions they did have were positive, it is amply clear that Angelo's father had limited involvement in his life. *PSR* at ¶ 51.

After the divorce, Angelo and his sister Stacey lived with their mother, Peggy. *PSR* at ¶ 52. One of Peggy's friends/significant others was abusive to Angelo and Stacey. Angelo recalled witnessing the son of Peggy's friend sexually abuse Stacey. *PSR* at ¶ 52. There was also a period of time of approximately one month when Angelo and Stacey were removed from their Mother's care. *PSR* at ¶ 52. Fortunately, over the years the relationship between Angelo and his Mother improved significantly, and she is now a consistent and reliable support.

Angelo graduated High School in 1999. He moved to Maine the day after, so he and his mother could be closer to Stacey. *PSR* at ¶ 53. Angelo attended college in Maine for one semester. *PSR* at ¶ 54. However, Angelo's knowledge of computers and programming soon provided him with significant professional opportunities. In 2001, Angelo began working for UNUM as a systems analyst and was earning approximately $90,000.00 per year. He was employed there until 2012, when be began working for Optiv Security.

During his time at UNUM, he also started the volunteered organization "MyMainePrivacy." This was a volunteer organization that would discuss cybersecurity issues related to the "local community and the state." In 2010, this group was issued an award for winning the Department of Homeland Security's National Cybersecurity Awareness Challenge. Angelo accepted the award on behalf of the organization. *Exhibit 1*. The award was presented by Janet Napolitano at the White House.

While employed at Optiv, Angelo continued to be highly successful in his profession. In 2023, he was interviewed as part of a news investigation into a "sim swapping" scam. A video of that interview is attached as *Exhibit 2*. Angelo's employment ended when he was laid off in June of 2023. *PSR* at ¶ 65.

This time period was not without challenges. In 2015, Angelo experienced his first major bout with a deterioration in his mental health. This resulted in him being evaluated at a hospital, and led to a diagnosis of bipolar II. *PSR* at ¶ 61. Although during this episode Angelo did not engage in any criminal behavior, it was scary for K.G., who was in a relationship with Angelo at the time. It should

be noted that during this incident Angelo himself called the crisis hotline to seek help. *PSR* at ¶61. In 2019, Angelo again reached out for help with his mental health and was hospitalized in Bournewood Hospital in Massachusetts. *PSR* at 61. He was hospitalized there for approximately two weeks. *PSR* at ¶61.

In addition, Angelo's son, "L.A." was born in late 2014. Angelo and K.G. separated in 2019, and a final Parental Rights and Responsibilities Order was issued in November of 2021. The Court Order in that case notes that Angelo and his son had visits every other weekend, and two weeks during the summer. He was also ordered to pay child support. The judgment notes that the contact "has gone well." The divorce judgment also highlights the concerns regarding Angelo's mental health, as well as some of the difficulty co-parenting. However, the judgment awards the parties shared parental rights and Angelo regular contact with L.A., recognizing that it was in L.A.'s best interest to have a strong relationship with his father.

**Defendant's Mental Health**

The single, and most obvious, contributing factor to Angelo's behavior is his mental health. The records before the Court clearly show how Angelo's mental health has cycled at various times in his life. During each cycle, he has been able to obtain professional treatment and return to his base line, which is that of a highly successful professional and involved father. This time was different because, unlike every prior instance, Angelo committed a number of crimes due to threats that he made to other people, and acts arising from his erratic behavior. As indicated by Dr. Peter Donnelly, "…the exacerbation and

decomposition of his mental illness that has contributed to his substantially poor judgment and lack of insight into his actions around the time of the allegations." *PSR* at ¶ 61C.

Since the initial evaluation, Dr. Donnelly met with Angelo again and reviewed his records. That update is attached as *Exhibit 3*. Currently Angelo is taking Wellbutrin, Trileptal, and Clonidine. Dr. Donnelly noted that Angelo stated, "I accept I will be taking medications for the rest of my life." Dr. Donnelly also noted that Angelo intends to "participate in community passed psychiatric and psychotherapy services once he is released."

## Conduct while Incarcerated

Angelo has demonstrated a commitment to rehabilitation and change during the 17 months he has been incarcerated. First, he has been a "trustee" for the majority of the period of his incarceration. A trustee is a status given to inmates who have demonstrated compliance with the rules, are worthy of additional trust, and who take an active role in assuming responsibilities in the facility. Angelo has also been actively participating in many programs. Attached as *Exhibit 4.1 to 4.58* are certificates reflecting Angelos's completion of a multitude of courses at the Somerset County Jail.  In addition, Angelo has not engaged in any conduct such as making inappropriate phone calls or engaged in behavior that suggests he will reoffend.

## The Offense Conduct

The is no dispute that Angelo's conduct was outrageous, vulgar, and led to significant distress by the victims in the case. Angelo himself recognizes just how damaging his actions were, stating that "[h]e was a monster and expressed extreme remorse. The defendant indicated he is ashamed he let his mental health deteriorate to such a degree." *PSR* at ¶ 17. There is no question that prosecution of this matter was appropriate.

## Recommendation

There are a variety of compelling factors that the Court must take into account. Angelo's conduct was more than a single annoying or harassing phone call. There were numerous vile and threatening messages left for the victims. This conduct also occurred in the context of a serious deterioration in Angelo's mental health. In addition, Angelo has never been charged with any criminal offense outside of the May-July 2023 timeframe. Otherwise, he has been gainfully employed as a professional and held employment for over a decade with each of his last two employers. By all other accounts, he has been successful and frankly an asset to his community. When taking these factors into account, the Defense recommends that the Court impose a sentence of 17 months, with credit for time served.

## The Plan

Angelo's personal history is the most compelling evidence that he can be a productive, law-abiding member of our community. He has an employment history which is exceptional, is highly skilled in the area of computer technology,

6

and had zero criminal history prior to the 2023 timeframe, which gave rise to the pending charges.

In addition, Dr. Peter Donnelly also conducted a follow up evaluation of Angelo.[1] *Exhibit* 3. Dr. Donnelly recommended the following:

1. Obtain an outpatient psychiatrist with duel-diagnosis expertise to address his bipolar disorder and intermittent substance abuse.

2. Engage in "individual psychotherapy to enhance cognitive behavioral coping mechanisms, manage the emotional ups and downs of re-entry into the community, and increase his insight and judgement in family of origin issues and close relationships in general."

A plan can be implemented that provides Angelo with the structure that is needed to ensure that he is successful. It should also be noted that this structure minimizes the risk of any re-offense.

1. Home confinement for 1 month with his mother, except with preapproval from probation for activities such as professional appointments, job interviews, running errands, etc. Electronic monitoring (including phone monitoring) could also be utilized if deemed appropriate by probation. The goal during this timeframe would be for Angelo to establish services.

2. Once Angelo has services established to the satisfaction of probation, home confinement will end and the standard conditions of probation would apply. Most importantly, Angelo will be required to engage in

---

[1] Angelo's initial evaluation was provided to probation and the Court previously. The most relevant points of that evaluation are repeated in the PSR at ¶ 61C.

regular mental health treatment and take all medications as prescribed.

### Final Recommendations

The Defense requests that this Honorable Court impose a guideline sentence of 17 months (high end of the guideline range) reflecting credit for time served, 3 years of supervised release, with the conditions noted in the PSR and the plan above.

Respectfully submitted,

Dated: January 14, 2025  /s/ Scott Hess
Scott Hess, Esq., BBO #4508
Attorney for the Defendant
Law Office of Scott F. Hess
114 State Street, Augusta, ME 04330
(207) 430-8079
Scott@hesslawme.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2025, I filed the foregoing Sentencing Memorandum using the Court's CM/ECF system, which will cause a copy of the motion to be sent to all counsel of record.

/s/ Scott Hess
Scott Hess, Esq., BBO #4508
Attorney for the Defendant
Law Office of Scott F. Hess
114 State Street
Augusta, ME 04330
(207) 430-8079
Scott@hesslawme.com